UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:18-CR-00076-BO-3

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PRO SE MOTION |
| JESUS NICOLAS RIOS, | ) | FOR COMPASSIONATE RELEASE |
| | ) | |
| Defendant. | ) | |

Mr. Jesus Nicolas Rios, through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with multiple extremely high-risk, chronic medical conditions. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Rios has properly exhausted his administrative remedies by filing his release request with the warden which was not approved and by filing with this Honorable Court. [D.E. 143]. A copy of Mr. Rios' administrative filing with the warden has been requested, but not received as of yet due to recent delays but will be supplemented upon receipt.

Mr. Rios is forty (40) years old and suffers from diabetes, hypertension, high blood pressure, and high cholesterol. He has also been diagnosed with Tuberculosis. [D.E. 134]. *See* PSR at ¶ 32. Medical records have been requested but not yet received likely due to recent delays associated with the COVID-19 pandemic will be forwarded in a supplemental filing.

1

While detained and unable to comply with social distancing and hygienic COVID-19 precautions recommended by the CDC, Mr. Rios risks the most hazardous COVID-19 complications, which could reasonably result in death with his combination of diabetes, high blood pressure, and respiratory conditions. His compromised health is of the nature that even if he was not in the custody of the Bureau of Prisons, he would be considered of the highest risk category for serious complications and/or death if he were to contract COVID-19. The fact that he is incarcerated makes it even more dire.

Mr. Rios is currently in custody at Phoenix FCI in Phoenix, Arizona where the detained population is around 1,000 total inmates, according to the Federal Bureau of Prisons. Staff members and inmates have already been infected with COVID-19 at Phoenix FCI at higher rates than the general population. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) According to a National Commission on COVID-19 and Criminal Justice report released September 2020 on the impact of COVID-19 in U.S. State and Federal Prisons, the COVID-19 mortality rate within prisons is twice as high as the general population's morality rate and the rate of COVID-19 infections is over four times as high as the general population. *Schnepel, Kevin T.* COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice (September 2020). New outbreaks of COVID-19 have increased rapidly in recent months, which is particularly concerning when the United States

has the largest incarcerated population in the world at about two million detainees. *Schnepel* (2020).

As most judges from the Eastern District of North Carolina have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court use its wise discretion and also issue an order reducing Mr. Rios' sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Rios' immediate case as well. For example, *see United States v. Bradford,* 5:01-CR-128-BO-1 (E.D.N.C. Jul. 30, 2020); *United States v. Spencer*, 2:11-CR-49-BO-2 (E.D.N.C. Jul. 30, 2020).

## STATEMENT OF FACTS

On April 10, 2018, David William Giguiere, Javier Mercado, and Jesus Nicolas Rios were named in a four-count indictment filed in the Eastern District of North Carolina. Count 1 charged defendants with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Mr. Rios was not named in the other counts. On December 18, 2018, Mr. Rios pled guilty to Count 1 of the indictment. On May 22, 2019, Mr. Rios was sentenced to 120 months with credit for time served while in federal custody, five years of supervised release with conditions, and a special assessment in the amount of $100. Mr. Rios' projected release date is December 5, 2026.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his

administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical

conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Rios is unfortunately extremely vulnerable to hospitalization for serious complications and even death once he contracts COVID-19 in a matter of time due to his combined diagnoses of diabetes, hypertension, high blood pressure, high cholesterol, and tuberculosis. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed November 12, 2020). Due to the combination of extreme risk factors, proven through statistics and medical reports, Mr. Rios' request for compassionate release qualifies under the guidelines as 'extraordinary and compelling' reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when the defendant is—

(I)     suffering from a serious physical or medical condition;
(II)    suffering from a serious functional or cognitive impairment; or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Rios' "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an

5

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Rios' vulnerability to COVID-19 as being placed in the high-risk category of likely **not being able to survive the Coronavirus** due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html. Mr. Rios' underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Rios posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Rios' vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *United States v. Brooker (Zullo)*, No. 19-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). Courts have used their wise and appropriate discretion, as this Honorable Court has as well, to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant

8

the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love from one's family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate alone and thus, in an inhumane manner because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which

9

Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria*, No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a

11

higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This global pandemic, as applied to Mr. Rios with his current unique combination of chronic illnesses and high-risk factors for death once contracting COVID-19, is an extraordinary and compelling circumstance.

### B. Mr. Rios' Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the charts below demonstrate.



Amid this rapidly-unfolding crisis, the recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect

13

those who need to stay incarcerated.[1] Mr. Rios is exactly the type of individual deserving of compassionate release: he is at high risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Rios' Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Rios' compromised physical health, and the unique once he contracts COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

The court shall impose a sentence that is sufficient but "not greater than necessary" to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

---

[1] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D). "[A]lthough defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances. *United States v. Lee*, 2020 WL 3422772, at *5 (E.D. Va. June 22, 2020). *United States v. Mel*, 2020 WL 2041674 at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

The nature and circumstances of this offense weigh in favor of a reduction of sentence. Mr. Rios was only named in one count of the four-count indictment. The underlying case did not any way allege any type of violent behavior by Mr. Rios or any conduct which would endanger the community in the future. There was "no identifiable victim." PSR at ¶ 18. Mr. Rios has been detained since his arrest on July 18, 2018, which is sufficient deterrence for a crime wherein Mr. Rios has expressed clear remorse for and a renewed dedication to his family since the birth of his premature son, who was born after being charged. Since being detained, Mr. Rios has reported experiencing "severe anxiety attacks." *See* PSR at ¶ 33. He takes anti-anxiety medication and sees a psychiatrist for his condition. His anxiety attacks are in part due to his worrying about the health of his son, Eli, who was born prematurely, and Mr. Rios' inability to support his fiancée while she cares for their son. *Id.*

Mr. Rios has received adequate rehabilitation while incarcerated. He participated in substance abuse treatment for three months while incarcerated. *See* PSR at ¶ 34. From 2017 to 2018, Mr. Rios trained with the same towing company where he would be employed upon his release. See PSR at ¶ 37. *See* **Exhibit A**, Letter from Mr. Rios' Fiancée, Mayra Arteaga. Mr. Rios has received vocational training and correctional treatment and now needs to be released to receive adequate medical treatment and preventative care in the most effective manner. Mr. Rios would be working full time for the towing company rather than training, further deterring any relapse into illegal activity. Mr. Rios would be living with his fiancée and young son and supporting his family in Bellflower, California.

Any further detention of Mr. Rios during this time would be to continue a sentence that is greater than necessary, particularly when "prisons now are even more dangerous than we typically accept." *United States v. Brown,* No. 4:05-CR-00227-1, 2020 WL 2091802, at *2 (S.D. Iowa Apr. 29, 2020). Mr. Rios has served approximately half of his sentence which reflects the seriousness of the offense, but which takes into account that his offenses and relevant conduct were clearly non-violent. Mr. Rios has also been experiencing panic attacks while detained, even before the outbreak of the COVID-19 pandemic, demonstrating that he is not serving a typical, day for day sentence, but a sentence that is increasingly punitive and anxiety inducing. Further deterring any future criminal conduct, Mr. Rios has a clear release plan and will be residing with his nuclear family in an area surrounded with supportive relatives, Termonja Carlton. *See* **Exhibit A.**

Furthermore, Mr. Rios' family circumstances have changed since his sentencing. Many families are now having to educate their children at home during the COVID-19 pandemic, particularly when the children are vulnerable due to unique medical issues such as being born premature, as is the case with Mr. Rios' son, Eli. It is more important than ever that children have two parental figures in the home to assist with working full-time and allowing adequate time for childcare and education within the home. Seeing the difficulty Mr. Rios' fiancée has gone through in trying to raise their son alone at this time is deterrent enough for Mr. Rios to remain on his current path of growth and rehabilitation. Mr. Rios' focus after his release is to ensure that his family is cared for and that his son is on track to have the best opportunities for his future.

A reduction or modification of Mr. Rios' sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Rios, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Mr. Rios' period of supervised release awaiting him will ensure that he complies with the release plan discussed with his family. *See United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and []the Court will not hesitate to

17

recommit him to prison should he again go astray.") The Court may also impose home confinement for a term equivalent to the remainder of his custodial sentence as well. 18 U.S.C § 3582(C)(1)(A). *See also United States v. Raia*, No. 2:18-CR-657, Dkt. No. 91 (D.N.J., May 7, 2020). Considering all of these emergency circumstances, it is respectfully submitted that this Honorable Court find that a combination of supervised release and/or home confinement would be sufficient to ensure deterrence, protection of the public, and which would allow Mr. Rios to seek alternative and appropriate medical care.

## CONCLUSION

Mr. Rios has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 12th day of November 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

18

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

Lucy Partain Brown
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
lucy.brown@usdoj.gov

This 12th day of November 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney